## CROSWELL v. MERCANTILE MUT. INS. CO.

*(Circuit Court, D. Minnesota.   January, 1884.)*

MARINE INSURANCE—DESCRIPTION OF VESSEL.
    Where an insurance certificate, issued under a policy of marine insurance, described the goods as "shipped on board of the Great Western Steam-ship Company," *held* that shipment upon a vessel not owned by the company, but chartered by it and placed upon its line as one of its vessels, satisfied the terms of the contract.

Stipulation is filed waiving a jury.   On March 8, 1879, the plaintiff shipped a quantity of flour, by through bill of lading, from Minneapolis to Bristol, England.   He applied to an insurance agent in Minneapolis, who gave him a certificate insuring him to the extent of $1,100.   The certificate is in the following form:

*"Insurance Certificate,*
"$1,100, Gold.                                                      No. 63,203.
        "OFFICE OF THE MERCANTILE MUTUAL INSURANCE COMPANY,
                            "NEW YORK, March 8, 1879.
   "This is to certify that on the eighth day of March, 1879, this company insured under policy No. 135,723, dated ———— 187–, and made for H. J. G. Croswell, ———— —— dollars in gold, on three hundred and twenty (320) sacks of flour, valued at eleven hundred dollars, shipped on board of the Great Western Steam-ship Company, at and from Minneapolis to Bristol, England; and it is hereby understood and agreed that in case of loss, such loss is payable to the order of Chamberlain, Pole & Co. on surrender of this certificate.
   "This certificate represents and takes the place of the policy, and conveys all the rights of the original policy-holder (for the purpose of collecting any loss or claim) as fully as if the property was covered by a special policy direct to the holder of this certificate, and free from any liability for unpaid premiums.
   "C. J. PESPARD, Secretary.        A. W. MONTGOMY, JR., President."
Indorsed on the side:
   "Not valid without the counter-signature of agent.
      "S. S. EATON.

   "NOTICE.   To conform with the revenue laws of Great Britain, in order to collect a claim under this certificate, it must be stamped within sixty days after its receipt in the united kingdom."

The Mercantile Mutual Insurance Company had issued a running policy to S. S. Eaton, of St. Paul, and given him blank certificates to fill up when a risk was taken.   He was its agent, with full authority to act.   The running or open policy to Eaton, on account of whom it may concern, is dated March 16, 1878, and did not restrict insurance on merchandise to or from any particular ports, nor prohibit the insurance upon any particular vessel or vessels.   The flour was shipped on the steamer Bernina, rated "A No. 1," which had been recently charted by M. Whitwill & Son, promoters and owners of the

Great Western Steam-ship Line, and was lost, with all on board, on the outward trip. Suit is brought to recover amount of insurance.

*Warner & Stevens*, for plaintiff.

*Young & Lightner*, for defendant.

NELSON, J. This action is brought on a marine insurance policy to recover for loss of flour shipped from Minneapolis to Bristol, England. The insurance was effected on a running policy to the defendant's agent in St. Paul, and the blank certificate of the amount of the insurance issued by the company, and indorsed by the persons therein named, was filled up by an insurance agent in Minneapolis, to whom the shipper applied. The certificate declares the goods are "shipped on board of the Great Western Steam-ship Company," without naming any particular vessel, and the special policy which forms a part of the certificate adds, "or by whatever other name, or names, the said vessel * * * is or shall be named or called." No name of the vessel on board of which the freight was laden being named in the policy, the question arises, which, in my opinion, is decisive of the case, does the contract confine the risk to a shipment on board vessels owned by or constituting the Great Western Steam-ship Company's line at the date of the policy? The shipment was made on board the steam-ship Bernina, chartered by the steam-ship company and placed in the line as one of its vessels. This was its first voyage. The shipper, when notified that the flour was laden on this vessel, an extra one of the line, reported the fact to Ames, the insurance agent who had filled up and given the certificate, and was told by him in substance that it would make no difference about the insurance if the vessel was the equal of others in the line. It may well be urged, under all the circumstances, that Ames, who was intrusted with the blank certificates, and authorized to fill them up and take risks, represented the insurance company, and that *his* assent binds it; but in the view entertained it is not necessary to so decide. The name of the vessel and the voyage should be correctly given, according to the terms of the policy, and, ordinarily, when the shipper resides at the port of shipment, or can consult the officers of the insurance company it is done; so that, before concluding the contract, it may have all the *data* with which to fix the rate of premium. In this case the shipper resided far away from the seaport, and by this contract he was enabled to insure his flour on the presentation of a through bill of lading, it being impossible to designate and name in the policy the particular vessel. No deceit has been practiced, and there can be no prejudice to the insurance company unless this vessel was so unseaworthy, or of a class rated less than the vessels owned by or running in the Great Western Steam-ship Company's line prior to this voyage.

It is claimed that the premium is greater upon chartered vessels not belonging to a regular line, and testimony has been introduced apparently sustaining this position. I think, however, when we look

at the policy and the manner in which the insurance was taken, the name of the vessel has little to do with the risk, and I do not see the mischief supposed to result in this case. It is true the rate of premium depends upon the character of the vessel, the port of destination, the season of the year, and circumstances tending to increase or diminish the hazards, but I do not think the circumstances in this case, that the vessel had been chartered and recently brought into the line, was calculated to increase the risk. If she was fully equal to the other vessels in the class, and had efficient officers and a competent crew, the degree of hazard is not greater. The evidence is complete and conclusive on these points. But the language of the certificate does not limit the shipment on vessels at that time comprising the line. For anything appearing to the contrary, the company could sell out all its vessels and purchase or charter new ones, and operate them, and the shipment on a vessel of the line thus constructed would satisfy the terms of the policy. The only restriction is that the flour must be laden on some vessel of the line of the Great Western Steam-ship Company. This is a reasonable construction of the contract, and the testimony of the officers of this and other insurance companies about the increase of hazard upon chartered vessels, cannot affect its terms and conditions.

Judgment for plaintiff for amount claimed in proof of loss, with interest and costs.